The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is United States v. Gene Leonard Teganya, Appeal No. 191689. Attorney DeMasso, please introduce yourself on the record for us. Good morning, and may it please the Court. I'm Chrissy DeMasso. I represent Jean Leonard Teganya. I'd like to reserve one minute for rebuttal. You may have it. Thank you. This 18-day trial was marked by extensive testimony that was at times confusing and in Rwanda in 1994. As courts have long recognized, expert testimony is uniquely powerful. It was especially so in this case, where the case hinged on credibility, where testimony was so varied, contradictory, and where so many of the witnesses came from a cultural context that the American jury would have had no foundation to understand. The government began its case with Dr. Clark, and even without naming Mr. Teganya or any of the witnesses, he impermissibly commented on the credibility of the defense and bolstered government witnesses. In particular, I'd like to focus on Dr. Clark's testimony about people of mixed Hutu and Tutsi descent. In opening, Mr. Teganya explained that his mother was Tutsi and his father was Hutu. In response to the government's last questions on direct, Dr. Clark went far beyond saying that some people who participated in the genocide were of mixed ethnicity. He said that this was a, quote, common defense for genocide suspects, and he said that, quote, more often than not, this defense had, quote, no evidentiary basis. His testimony pinpointed Mr. Teganya's defense, associated it with something that genocide perpetrators often argued to avoid responsibility and declared it not credible. He did not need to say Mr. Teganya's name. His general testimony mirrored the specifics of what had been and would be presented by the defense. This statement, as well as the others highlighted in the briefing, was inadmissible, commented on the defense theory, and usurped the jury's role. Unless there are other questions on this issue, I would like to move to the sentencing question. Was that objected to, that particular statement? Yes, that argument was preserved. And what was the nature of the objection to it? I don't know if there's a specific, the government acknowledges that it's preserved. The, if I go to the, he started, the government started to ask the question, counsel says objection, the court says let me hear the question, and then overruled. There's no additional discussion. And what's the nature of your objection to it? Because I could imagine at least two potential routes. One is that it's got no foundation, there's no support for the even if it was supported, in other words, this is a common statement, and it's more often than not, not credible. You seem to be saying that it is itself commentary on this particular witness. Yes, it's commentary on the defense as a whole. Yep. But what, what's your best authority for that since it's not purporting to be a statement about his actual defense, it's just a statement about within a universe of people who recount what happened. It is common and more often than not, not with foundation. I mean, I do think that there are questions about whether or not Dr. Clark had the ability to make that sort of broad pronouncement about. But that doesn't seem to be an objection. You have grief to us. But I, but apart from that, I think that, and you know, the district court recognizes this, there's a part portion where the district court talks about the danger of having general expert testimony that then would allow the jury to leap to the specific. And I think here it's, there's no one else that Dr. Clark could be talking about. There's no other reason to talk about people of mixed Hutu and Tutsi ethnicity, other than that, that that is what the defendant had just argued. I beg your pardon. I thought Dr. Clark had in fact experience in interviewing a very large number of people. He had a foundation on which he gave this testimony. Isn't that correct? I, what I was talking about was the, him giving this testimony. Sorry, what did you say? Sorry, the relevance of this, of this testimony hinges on its connection to Mr. Tigana's defense. This testimony becomes relevant because Mr. Tigana has just gotten up and said, you know, I am, I am of mixed, I am of mixed descent. So it's clear that this testimony is being given to comment on that defense. I'm sorry, because it is relevant, it suddenly becomes testimony about Mr. Tigana and his witnesses? That's your theory? This particular argument, I think, is about Mr., this particular portion of Dr. Clark's testimony, I think, is commenting on Mr. Tigana's defense, rather than on witnesses. Can I just ask you one, just a hypothetical, I think, makes the point about the concern, at least that I have with this theory. It is either of two that come to me. There's a lot of evidence about cross-racial identifications and the problems with them. If you had a police saying why it should be deemed correct, you know, this was what he did, and then you had an expert come in and say, well, you know, I've studied a lot of these cross-racial identifications and they are often, more often than not, inaccurate. On your theory, you'd have to throw out that testimony, just like if you had an expert come in about reasons to doubt confessions, which I know defense attorneys often want to bring, you'd have to throw that out as well. So I'm just having trouble seeing how we would distinguish this from a whole variety of cases in which expert testimony comes in to inform a jury about reasons to be skeptical about a certain type of testimony that, when you first hear it, might seem very powerful, but if you know it in context, you might start to see, well, maybe I should take it with a grain of salt. I understand, and I think here the defining principle comes when you look at what Dr. Clark actually said. I think if he had merely said there were some genocide perpetrators who were of mixed ethnicity, I think that much could be okay, but I think for him to come in and say, you know, I've interviewed, what, you know, 100, 200, however many genocide perpetrators, and in my opinion, my expert opinion, which is critical because it's about him being an expert, this defense is not credible. That's where I think the problem comes in, is that he's and he is targeting it and marking it as not credible. How about in a child sexual abuse case where the prosecution wants to put on a witness, and the witness says, children often deny that they were abused for a whole variety of reasons, so you can't really rest on the fact that the child denied it for 10 years before. Wouldn't that be admissible? And that sounds very similar to what we have here. I think there's a difference between talking about saying that something happens, something that you might not expect, saying that it happens, and then Dr. Clark goes beyond that and says, not only does this something that you might not expect to happen, happens, but in my expert opinion, it is not a valid excuse. It is not defense that might initially sound okay to you. Not only is this defense not automatically true, but it's also, in my expert opinion, not an acceptable defense, not backed up by evidence. That part is the jury's decision to make. What is backed up by evidence? What is the evidence here? And to evaluate the credibility of this person's use of that statement. If I may move briefly to the sentencing argument. Yes. Yes. Thank you. Just very quick, I believe my time is about to elapse, but Mr. Teganya noted in his arguments that Akatoye requires more than a mere conflict in the trial testimony, and I think that although that's not a perjury case, I think that that background is very relevant to both of his preserved claims about the significant further obstruction and about the insufficient explanation. I think that here, the best reading of note seven comes from Thomas in the 11th Circuit. Okay. We'll rely on your brief. You have one minute rebuttal. Thank you. We'll hear from the government. So, Attorney DeMasso, if you could please mute your device. And Attorney DeVincentis, if you could introduce yourself to the record, please. Good morning. May it please the court. Alexia DeVincentis on behalf of the United States. To pick up immediately with the expert testimony issue, and specifically the testimony concerning instances in which Hutus engaged in genocidal acts, notwithstanding that they came from mixed ethnicities, the defendant's reply brief and his arguments here today, I think, have really crystallized that his argument is not that this testimony generally was inadmissible. Rather, his concern is with particular terms of phrases that the expert used in presenting it. And Judge Barron, you had asked about the question of preservation of an objection to those particular lines, those particular phrases. And I think it's clear, in fact, that when viewed with the level of granularity that the defendant is presenting here, the objection is, in fact, not preserved. With respect to the testimony regarding common lines of defenses, the defendant at no point interjected when Dr. Clark used those phrases and moved to strike that testimony. Now, importantly, he did elsewhere, namely when the government's initial phrasing of the question regarding genocide denial in his view seemed to call for a commentary on the defense. And the district court at that point sustained the objection and struck the question. Here, however, the defendant said nothing. And so I think it is, in fact, fair to say that with respect to this particular argument, we are on plain air review. And I think particularly on plain air review, the challenge fails. I don't think that the defendant can demonstrate that this is so clearly or obviously the type of testimony that falls outside of their general practice. And don't you have an argument that it's not error, period? Of course, yes, Your Honor. Well, why don't you make that? Sure. Well, first of all, I think that the defendant has conceded in her argument, in the argument here today, that this testimony was, in fact, relevant. She stated that it was made relevant, in fact, by the defendant's opening statement. And then I think two points in particular are worth emphasizing in terms of why the testimony was not only relevant, but not unduly prejudicial. And that's that, first of all, the testimony was rooted in Dr. Clark's research. If you look at the statement that she is referring to, it is, in fact, it's couched by reference to the cases that Dr. Clark had observed at the Kachacha proceedings. So, none of the statements actually referred to Tegaña's defense or to any of the cases in this case. And what's more, none of the statements was categorical regarding mixed ethnicity genocides. Dr. Clark stated only that the theory lacked an evidentiary basis, more often than not, which stopped far short. Can I ask you one question? Because I know the government, I recall in past cases, has objected to the admission of testimony by experts about confessions can be believed. Sometimes on the ground that the evidence is just, this may not be the objection that we have before us here, but that the foundation for the expert's view just can't support making it come in. Because, you know, I talked to, I interviewed 500 people of mixed background, and I found those 500 people, more often than not, not telling the truth. What value is that as evidence for the jury to hear? We don't know what the circumstance of those 500 people were, whether they were remotely like the person that we have here. So, I mean, I can see a lot of reasons to be concerned about allowing this kind of testimony, which is, I talked to some people, those people often lie. I'm not saying this person's lying, you should just know that's often the case. I could see a real reason for taking it. We don't have an objection on that score to the testimony. No, I don't understand the defendant as making an objection that there was a lack of foundation for the opinion that was offered. Again, the testimony was specifically couched by reference to this individual's interviews of various genocide perpetrators and his observation of various proceedings at the time. To get to sort of your second point that was embedded in that question, I think the district court was correct here to recognize that the very notion that an individual of mixed ethnicity himself could potentially engage in crimes against Tutsis was something that was so counterintuitive to an American jury that the testimony became necessary, and not only that it was necessary to flag the fact that this was a possibility, but to convey that it was a possibility not just as a matter of mere aberration that this happened, but rather that it was something that happened with some frequency. The actual testimony was more often than not. Yes, and I think we can acknowledge that there's a continuum. Five minutes remaining. We'll acknowledge there's a difference between saying that something potentially sometimes versus often versus more often than not, and then approaching something that sounds more categorical. That last point, maybe your argument is that the extent of the objection is to the more often than not phraseology. That was not made as a specific objection, which is why it would be subject to plain error. Exactly. The defendant said nothing whatsoever when this particular phraseology was used. Yes, we have arguments, as Judge Lynch pointed out, that there was no error at all here, but certainly we believe that on plain error review the defendant's challenge can prevail. Just briefly on the sentencing issue, the reply brief again here is helpful in terms of narrowing the issues. The defendant has conceded that the constitutional issue is effectively off the table, leaving just the guidelines challenge and the challenge regarding the district court's factual findings. On the first, which defense counsel briefly referenced here today, I think the defendant has maintained that that argument is preserved. I think it's clear from the record that it's not. The only objection that the defendant made before the district court regarding the application of this enhancement was to say, to remind the court, that it couldn't just reflexively apply the enhancement based on the testimony or the fact that the jury had rejected the defense, and that rather in the words of the Gobi case that the defendant himself cited, the court had defined that the defendant had deliberately prevaricated about material evidence. That, in my view, is an altogether different argument than saying that even if the district court were to find that he had lied, that if the lies were simply a repetition of the lies charged in the indictment. So here again, I think we are on plain error review, and for the reasons set forth in our brief, that is to say that the defendant can't meet. In fact, we would argue plain error review or not. The defendant's challenge on this point, as you can see, can't prevail. Unless the court has any further questions, it rests on its brief. Thank you. Thank you, counsel. You can mute your device, and attorney DeMasso, if you could reintroduce yourself on the record. Christy DeMasso for Jean-Lenard Tigana. At the outset, I would just like to say that in both instances here, the defendant did make general objections, and we would argue that that preserves these issues. He made a general objection to the line of testimony about mixed ethnicities, and he made a general objection to the imposition of the obstruction enhancement, thus preserving the argument that all of the conditions required to impose the enhancement had to be met. One of those is a significant further obstruction language, and one of those is the requirement of a sufficient explanation. And on the significant further obstruction, I would just like to say that there is the law in Thomas, but this is also a unique case. This is a case where Mr. Tigana had been pursuing asylum claims for 20 years. He went to trial. It was 17 days long. He had put on 19 witnesses. He was not, this is not a case where he's the sole witness presenting a different narrative. Many people back up chunks of what he says, and this is where I return to the acatoye language. Although the jury rejected that, that is not enough. And given the specific context of this case, the evidence, how contradictory it was throughout. Thank you, counsel. Thank you. That concludes argument in this case. Attorney DeMaso and Attorney DeVincentis, you should disconnect from the meeting at this time.